**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SWINGLESS GOLF CLUB CORPORATION, a Wyoming corporation,

    Plaintiff,

v.

ROY H. TAYLOR, individually and d/b/a CENTERFIRE GOLF COMPANY, and JAMES S. STOWELL, an individual, JACK GALANTI, an individual, MIKE STRINGER, an individual, CENTERFIRE GOLF COMPANY, a California corporation, NEW RIVER INDUSTRIES CORP., EZEE GOLF LLC, a Delaware limited liability company, and STEVE FLUKE, an individual,

    Defendants.
  /
ROY H. TAYLOR, JAMES S. STOWELL, an individual, JACK GALANTI, an individual, MIKE STRINGER, an individual, STEVE FLUKE, an Individual,

    Counterclaimants,

v.

SWINGLESS GOLF CORPORATION, A Wyoming Corporation, JAMES DEPORCHE, an individual, and JOYCE TAYLOR, an individual, and DOES 1–25,

    Counterdefendants.
  /

No. C 08-05574 WHA

**ORDER GRANTING IN PART AND DENYING IN PART COUNTERDEFENDANTS' MOTION TO DISMISS AMENDED COUNTERCLAIMS**

**INTRODUCTION**

In this intellectual property dispute involving a trigger-equipped, gunpowder-loaded golf club that enables a user to launch a golf ball over two hundred yards without swinging, counterdefendant Swingless Golf Club Corporation and third-party defendants James DePorche and Joyce Taylor move to dismiss eight amended counterclaims proffered by counterclaimants Roy H. Taylor, James S. Stowell, Jack Galanti, Mike Stringer, and Steve Fluke. For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

**1.  THE COMPLAINT**

Plaintiff Swingless Golf Club Corporation ("SGCC"), a Wyoming corporation, initiated this lawsuit on December 15, 2008, against a number of business entities and individuals, including counterclaimants Taylor, Stowell, Galanti, Stringer, and Fluke (Dkt. No. 1). As alleged in the complaint, SGCC, a Wyoming corporation, is the direct successor-in-interest to Swingless Golf Corporation ("Swingless Golf"), a dissolved California corporation.

SGCC is in the business of manufacturing and selling — as its name implies — a product called the swingless golf club, which enables a golfer to drive golf balls great distances without swinging through the use a beveled piston and explosives.[1] SGCC is also alleged to own trade secrets, patents, and trademarks involved in the production of this product. Many individual defendants in this action are former Swingless Golf employees who are now allegedly agents, representatives, or employees of a separate company called EZee Golf LLC, which makes its own swingless golf product to compete with SGCC.

Defendant Roy H. Taylor is the former chief executive officer of Swingless Golf, and is the inventor and former owner of four U.S. patents encompassing the swingless golf club invention: No. 5,522,594, No. 5,816,927, No. 5,924,932, and No. 6,139,440. Additionally, there are processes, methods, and techniques of manufacturing the swingless golf club product

---

[1] This product should not be confused with the spring-loaded billiard cue (U.S. Patent No. 3,858,882) or ACME Rocket Sled (*see* Ian Frazier, *Coyote v. Acme*, The New Yorker, February 26, 1990, at 42–43).

developed by Swingless Golf that are alleged to qualify as trade secrets under California law and are protected by disclosure agreements between defendants and Swingless Golf.

In June 2002, defendant Roy Taylor assigned the '594, '927, and '932 patents to Swingless Golf, making the California corporation the exclusive owner of those patents. Five months later, defendant Taylor transferred related non-patent intellectual property rights, including trade secrets, to Swingless Golf. Defendants Steve Fluke and Mike Stringer entered into identical agreements at around the same time period, where they also acknowledged that Swingless Golf owned the intellectual property in question and promised not to sell or use it. Defendant Taylor was subsequently removed from his position as CEO of Swingless Golf in approximately August 2003.

In September 2003, defendant Taylor executed two patent assignment documents — without authorization from Swingless Golf — in which he purported to transfer the '594 and '932 patents and the trademark "Swingless" to himself, and then to an alleged sham corporation called "New River Industries Corporation." Swingless Golf promptly brought suit in Alameda County Superior Court alleging that defendant Taylor lacked the authority to effectuate the September 2003 transfers. Following that lawsuit, the parties entered into a settlement agreement in which defendant Taylor agreed to execute assignments to return the '927 and '932 patents and the trademark "Swingless" back to Swingless Golf. In August 2005, the Alameda County Superior Court ordered the patents reassigned pursuant to the settlement agreement. This judgment was recorded with the USPTO in April 2006.

Swingless Golf dissolved in 2006 and all its interests — including ownership of the intellectual property underlying the swingless golf club product — were assigned to SGCC, a new Wyoming corporation. In March 2007, without approval from SGCC, defendants again unilaterally purported to transfer the '927 and '932 patents to themselves. As before, SGCC is attempting to void these transfers.

In the action before the undersigned, plaintiff SGCC alleges that defendants did not have the authority for such a transfer, and that since at least April 2009, defendants have been offering for sale a product through EZee Golf that is allegedly similar to the swingless golf club sold by

plaintiff. The product sold by defendants is allegedly based on the same functionality, specifications, trade secrets, and patents as those owned by plaintiff. The complaint also alleges that the competing golf club sold by defendants has a sticker on its shaft identifying that it "incorporates the '440, '927, and '932 Patents, which belong to [plaintiff]" (Compl. ¶ 34). Defendants allegedly told undercover buyers and investors that defendants owned the patents in dispute, even though they knew this statement to be false.

A first amended complaint was filed by SGCC on April 7, 2009, alleging the following causes of action (Dkt. No.29):

1. Patent infringement;
2. Misappropriation of trade secrets;
3. Intentional interference with contractual relations;
4. Intentional interference with prospective business advantage;
5. Unfair competition;
6. Lanham Act violation; and
7. Breach of contract.

An order dated July 7, 2009, dismissed the fourth claim but upheld all remaining claims (Dkt. No. 49). On August 24, 2009, plaintiff filed a second amended complaint that omitted both "intentional interference" claims and added the allegation that defendants were on notice of their alleged patent infringing activities since 2002 (Dkt. No. 59).

**2. AMENDED COUNTERCLAIMS**

Following the filing of plaintiff's second amended complaint, defendants Roy H. Taylor, James S. Stowell, Jack Galanti, Mike Stringer, and Steve Fluke filed eight counterclaims against plaintiff SGCC and two third-party individuals: (1) James DePorche, a former Director of Swingless Golf and an alleged Director of SGCC, and (2) Joyce Taylor, the former Secretary of Swingless Golf, an alleged Director of SGCC, and defendant Roy Taylor's ex-wife (Dkt No. 69 ("ACC") ¶¶ 6, 7, 34). For the sake of convenience, the five individual defendants listed above will be referred to collectively as "counterclaimants," and SGCC, DePorche, and Joyce Taylor will be referred to collectively as "counterdefendants."

4

In their amended counterclaims, counterclaimants allege that they were *fraudulently induced* by counterdefendants to transfer their intellectual property rights, including patent rights and trade secrets, to Swingless Golf and were "systematically removed as business partners, members or employees by the Board of Directors of Swingless Golf Corp," which included Swingless Golf director James DePorche and director/secretary Joyce Taylor (ACC ¶¶ 26, 28, 62–67). Counterclaimants additionally argue that they "relied on the representations presented by [DePorche] and [Joyce Taylor] and agreed that the company Swingless Golf would be run more efficiently with only [DePorche] and [Joyce Taylor] in operation" (*id.* ¶ 29). These representations were allegedly false because counterdefendants DePorche and Taylor only intended to "take control of the company and dissolve it and establish a new company where they would be the sole [shareholders] and would control the patents and all subsequent designs arising from [counterclaimant Roy] Taylor's own designs" (*id.* ¶ 32). As a result, counterclaimants state that they were "systematically relieved of their duties and never issued the stock shares as promised by the Board of Directors of the original company Swingless Golf" (*id.* ¶ 31).

Counterclaimants also assert that they have developed and are marketing a design under a *new* patent — entirely apart from the patents that were allegedly assigned to Swingless Golf — that is currently pending approval as U.S. Patent Application No. 123107 (*id.* ¶¶ 46, 49). Referring to this new patent-pending design, counterclaimants allege that counterdefendants DePorche and Taylor "have now taken the new golf club design from [counterclaimants] and are marketing it as their own[, t]hus infringing on a patent pending design of [counterclaimants]" (*id.* ¶ 61).

Finally, counterclaimants allege that on August 31, 2006, counterdefendants reincorporated Swingless Golf, a California corporation, into SGCC, a Wyoming corporation, and assigned all of Swingless Golf's intellectual property interests to the new entity before dissolution (*id.* ¶¶ 50, 51). Although counterclaimants held various amounts of stock in Swingless Golf at the time of the transfer of assets and dissolution, they allegedly received neither notice that the California corporation was dissolving, value for their shares, nor reimbursement for the personal funds that they invested (*id.* ¶¶ 52, 53). Counterclaimants likewise received no shares in the new

5

Wyoming entity (*id.* ¶ 54).  In sum, counterclaimants assert that counterdefendants, with respect to their handling of Swingless Golf's transformation into SGCC, "failed to hold noticed share holder meetings, issue shares as required, produce any accounting of the business operation, or produce quarterly, or annual reports of the business operations" (*id.* ¶ 60).

As a result of these alleged actions, counterclaimants allege damages of at least $315,000 in personal assets and the undetermined value of their stock in Swingless Golf (*id.* ¶ 56).  This includes an allegation by Roy Taylor that he took out numerous loans in the name of Swingless Golf, using his own personal assets as collateral, but that Swingless Golf refused to acknowledge or repay these loans (*id.* ¶¶ 37–40).

In sum, counterclaimants allege the following counterclaims:

1. Fraud against counterdefendants James DePorche and Joyce Taylor;

2. Conversion against counterdefendants James DePorche and Joyce Taylor;

3. Unjust enrichment against counterdefendants James DePorche and Joyce Taylor;

4. Breach of implied contract against counterdefendants James DePorche and Joyce Taylor;

5. Corporate waste (misuse of investors' funds) against counterdefendants James DePorche and Joyce Taylor;

6. Corporate waste (abandonment of patents) against counterdefendants SGCC, James DePorche, and Joyce Taylor;

7. Breach of fiduciary duties against counterdefendant James DePorche; and

8. Corporate abuse against counterdefendants James DePorche and Joyce Taylor.

Counterdefendants now move to dismiss all eight counterclaims pursuant to FRCP 12(b)(6) (Dkt. No. 71).

**ANALYSIS**

A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a complaint.  Rule 12(b)(6) tests the legal sufficiency of the claims asserted and "must be read in conjunction with Rule 8, which requires a short and plain statement showing that the pleader is entitled to relief and

6

contains a powerful presumption against rejecting pleadings for failure to state a claim." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (quotation marks omitted). These settled principles are qualified by the more stringent pleading standard recently articulated by the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009) (establishing a "plausibility" standard for the adequacy of stating a valid claim in a federal complaint under FRCP 8(a)(2)).

### 1. COUNTERCLAIM ONE: FRAUD AGAINST COUNTERDEFENDANTS DEPORCHE AND TAYLOR.

"Under California law, a fraud action requires five elements: 1) misrepresentation; 2) knowledge of the falsity of the representation; 3) intent to induce reliance; 4) justifiable reliance; and 5) damages." *Stewart v. Ragland*, 934 F.2d 1033, 1043 (9th Cir. 1991). The heightened pleading standard of FRCP 9(b) applies to claims of fraud, requiring that "a party must state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted).

Counterclaimants allege that counterdefendants DePorche and Taylor fraudulently induced all five counterclaimants to transfer their intellectual property rights to Swingless Golf by convincing counterclaimants that the transfer would be in the best interests of Swingless Golf as a company (ACC ¶¶ 28, 29, 63–67). But, following the transfer, counterdefendant DePorche "systematically removed all defendants from employment with [Swingless Golf]. . . in August 2003, which fraudulently precluded defendants from using the intellectual property that they personally developed" (*Id.* ¶¶ 31, 67).

It is undisputed that counterclaimants have sufficiently alleged a misrepresentation (that counterdefendants informed them that it was in the best interest of the company for only DePorche and Joyce Taylor to be in control, when allegedly it was *not*), intent to induce reliance (that counterdefendants *wanted* counterclaimants to relinquish such control), and damages (that

7

counterclaimants were hurt financially by their loss of control when Swingless Golf reorganized as SGCC). In their motion, counterdefendants DePorche and Joyce Taylor challenge only the second and fourth prongs of the fraud claim.

### A. Prong Two: Knowledge of the Falsity of the Representation.

While counterdefendants DePorche and Taylor admit that counterclaimants have sufficiently alleged misrepresentation, they challenge whether the allegations are sufficient to show *knowledge* by counterdefendants that the statements were false when made. Counterdefendants argue that the statements targeted by this counterclaim "appear to be the valid business judgment of a director of a company. There is no indication . . . as to how these representations were false" (Br. 5).

As explained above, however, Rule 9(b)'s heightened pleading requirements do not apply to allegations regarding an accused's state of mind — thus, knowledge need only be alleged *generally* to state a valid claim for fraud. FRCP 9(b); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Here, counterclaimants have met this non-heightened pleading standard, which presumably is the *Iqbal* standard under Rule 8. Specifically, they have alleged that DePorche and Taylor had knowledge that the representations were false due to an evident motive for making such false misrepresentations — *e.g.*, to "keep all income . . . for themselves" (*see* ACC ¶ 34).

Counterdefendants DePorche and Joyce Taylor argue in the alternative that an "opinion is not a misrepresentation" (Reply Br. 1–2). This argument, however, is raised first in their reply brief, and therefore need not be considered. Nevertheless, the Ninth Circuit has clearly held that:

> Although predictions as to future events cannot normally form the basis of a fraud action, California law carves out an exception to this rule 'where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge.'"

*In re Jogert, Inc.*, 950 F.2d 1498, 1507 (9th Cir.1991) (quoting *Borba v. Thomas*, 70 Cal. App. 3d 144, 152 (1977)). In this case, DePorche and Joyce Taylor were both Directors of Swingless Golf when they allegedly made the misrepresentations to counterclaimants. Therefore, given the

1 relative positions of all parties, counterclaimants could have reasonably relied upon the superior
2 knowledge of counterdefendants.
3     In sum, counterclaimants have proffered sufficient facts to allege counterdefendants'
4 knowledge of the falsity of the representations, and this prong is satisfied for purposes of
5 surviving a motion to dismiss.

        **B.**       **Prong Four: Justifiable Reliance.**

7     As to this prong, counterdefendants simply argue that counterclaimants have failed to state
8 why their reliance on DePorche's and Joyce Taylor's representations was *justified*.
9     This argument is rejected. Counterclaimants *do* sufficiently state why their reliance on
10 counterdefendants' misrepresentations was justifiable. Specifically, counterclaimants state that
11 they transferred ownership and signed away their rights to compete because they believed
12 "DePorche to be acting in the best interests of [Swingless Golf]," and they were told that such a
13 transfer was "essential" to the future operation of the company (ACC ¶¶ 28, 29, 63–66). As noted
14 above, given the respective positions of DePorche and Joyce Taylor in the company at the time
15 the misrepresentations were allegedly made, counterclaimants have sufficiently alleged facts to
16 show that such reliance was reasonable, at least for purposes of surviving a motion to dismiss.
17     In sum, counterclaimants have sufficiently alleged their counterclaim of fraud against
18 counterdefendants DePorche and Joyce Taylor, and the motion to dismiss as to this counterclaim
19 is **DENIED**.

        **2.**       **COUNTERCLAIM TWO: CONVERSION AGAINST COUNTERDEFENDANTS DEPORCHE AND TAYLOR.**

The elements of a conversion claim under California law are as follows:

> A conversion occurs where the defendant wrongfully exercises dominion over the property of another. *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 35 Cal.Rptr. 3d 684, 691 (Ct. App. 2005) (citing *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 61 Cal.Rptr.2d 707, 709 (Ct. App. 1997)). To establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages. *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 245 Cal. Rptr. 548, 550 (Cal. Ct. App. 1988) (citing *Baldwin*, 145 Cal.Rptr. at 416). A plaintiff in a conversion action must also prove that it did not consent to the defendant's exercise of dominion.

9

*Band of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).

Counterclaimants allege that counterdefendants DePorche and Taylor converted defendants' shares of stock in Swingless Golf when counterdefendants dissolved the California business and failed to compensate counterclaimants for the value of this stock (ACC ¶¶ 68–75).

In their brief, counterdefendants DePorche and Taylor concede that counterclaimants have sufficiently alleged that stock was converted by *someone* at Swingless Golf, that counterclaimants did not consent to the conversion, and that counterclaimants were damaged as a result. Counterdefendants challenge only that counterclaimants have not sufficiently alleged that DePorche and Joyce Taylor *personally* converted the stock.

This argument is unpersuasive. The law is clear, as counterdefendants admit, that "[d]irectors or officers of a corporation [*can*] incur personal liability for torts of the corporation . . . *[if] they participate in the wrong or authorize or direct that it be done.*" *United States Liability Insurance Co. v. Haidinger-Hayes, Inc.*, 463 P.2d 770, 775 (Cal. 1970) (emphasis added). In this connection, counterclaimants have sufficiently alleged such participation, authorization, or direction by DePorche and Taylor. For example, counterclaimants state that DePorche and Taylor were members of the Swingless Golf Board of Directors, and that the Board assigned counterclaimants' property and then voted to dissolve Swingless Golf (ACC ¶¶ 9, 51, 70). Counterclaimants further allege that DePorche and Taylor were *individually* responsible for "systematically remov[ing counterclaimants] as business partners, members, or employees" of Swingless Golf (*id.* ¶ 26). Finally, it has been sufficiency alleged that "[t]he only shareholders of Wyoming Swingless were [DePorche] and [Joyce Taylor]," which means that the entire benefit of the alleged conversion of Swingless Golf stock allegedly went to counterdefendants DePorche and Taylor (*id.* ¶ 30). These factual allegations certainly make it *plausible*, under the *Iqbal* standard, that DePorche and Joyce Taylor participated in the wrong or authorized or directed that it be done.

In sum, counterclaimants have sufficiently stated a conversion counterclaim, therefore the motion to dismiss this counterclaim is **DENIED**.

**3.    COUNTERCLAIM THREE:  UNJUST ENRICHMENT AGAINST COUNTERDEFENDANTS DEPORCHE AND TAYLOR.**

10

To prove an unjust enrichment claim in California, among other things, counterclaimants must show that counterdefendants received a benefit *and* unjustly retained such a benefit at the expense of another. *Lectrodryer v. Seoulbank*, 91 Cal. Rptr. 2d 881, 883 (Ct. App. 2000) (cited in *In re Joe Atkinson*, 14 Fed. Appx. 960, 962 (9th Cir. 2001) (*unpublished*)). Section 338(d) of the California Code of Civil Procedure states that such a claim must be brought within three years of the date that the aggrieved party discovered that an unjust enrichment had occurred. *See also Target Technology Co., LLC, v. Williams Advanced Materials, Inc.*, No. SACV 04-1083 DOC (MLGx), 2008 WL 5002935, *7 (C.D. Cal. Nov. 21, 2008).

Counterclaimants base their unjust enrichment claim on the following facts (*see* ACC ¶ 76–84):

> By September 1, 2003, when [counterclaimant] Roy Taylor was fired as CEO, the [Swingless Golf] Bank of America loans amounted to . . . $14,939.59 plus interest. On September 1, 2003, [Swingless Golf] closed its bank account with Bank of America and opened a new one in a new bank. . . . Because the Swingless bank account was closed and Roy Taylor had used his personal assets as collateral for the [Swingless Golf] loans, Bank of America quickly began collections proceedings directly from Roy Taylor. . . . Roy Taylor attempted to transfer these loan balances to [Swingless Golf] but [Swingless Golf] refused to acknowledge these loans and did not repay them. . . . As a direct and proximate cause of plaintiff's actions, Roy Taylor suffered damages of the $14,939.59 balance plus interest.

Counterdefendants DePorche and Taylor argue that the unjust enrichment claim — first alleged by counterclaimants on September 13, 2009 — does not fall within the three year statute of limitations set forth in Section 338(d) (Dkt. No. 65). They emphasize counterclaimants' own allegations that Swingless Golf closed its account with Bank of America on September 1, 2003, and Bank of America then "quickly" began collections against counterclaimant Roy Taylor (Br. 8). As a result, counterdefendants argue that counterclaimant Roy Taylor discovered the closing of the Bank of America account in *approximately September 2003* and discovered the non-repayment of the loans *shortly thereafter*. Given this plausible reading of the allegations, the statute of limitations for the unjust enrichment counterclaim appears to have expired in *late 2006*. In other words, counterclaimants are almost three years too late.

11

Presented with this hurdle, counterclaimants try to leap but not very high.  Indeed, their argument that SGCC — the Wyoming corporation — was not established until approximately August 2006 and they did not learn of the non-issuance of the shares of stock until approximately September 2006 is completely irrelevant to the allegations underlying their unjust enrichment claim, which is predicated *solely* on the non-repayment of the Bank of America loans.

Based upon a plausible reading of the facts alleged by counterclaimants themselves, Roy Taylor had knowledge of the alleged unjust enrichment in approximately late 2003.  The applicable statute of limitations on this claim therefore expired in *approximately late 2006*, far before the claim was brought in this action.  As such, the motion to dismiss the unjust enrichment counterclaim is **GRANTED**.  Because of this determination, this order need not address the parties' various arguments going to the merits of this counterclaim.

**4.    COUNTERCLAIM FOUR:  BREACH OF IMPLIED CONTRACT AGAINST COUNTERDEFENDANTS DEPORCHE AND TAYLOR.**

This counterclaim is also based on counterdefendants' alleged non-repayment of the Bank of America loans discussed above, but here counterclaimants assert that Swingless Golf breached "an implied contract that [it] would reimburse Roy Taylor for the debts incurred for [Swingless Golf]'s benefit" when it failed to repay counterclaimant Roy Taylor for the loans (ACC ¶ 93).

Counterdefendants DePorche and Taylor again argue that the applicable statute of limitations has expired on this claim.  Indeed, Section 339(1) of the California Code of Civil Procedure states that an action for breach of implied contract has a two year statute of limitations that begins when the loss of damage suffered by the aggrieved party is discovered.  Counterclaimants, as with the prior counterclaim, fail to respond to this argument in their opposition.

As explained in the prior section, counterclaimant Roy Taylor learned of Swingless Golf's alleged non-repayment of the Bank of America loans in approximately *late 2003*, and the applicable statute of limitations began to run at that time.  As a result, the two year statute of limitations expired in *approximately late 2005*, far before this counterclaim was brought.  The motion to dismiss the breach of implied contract counterclaim is **GRANTED**.  As a result, this order need not address the parties' various arguments regarding the merits of this counterclaim.

12

### 5. COUNTERCLAIMS FIVE AND SIX: CORPORATE WASTE.

Claims of corporate waste in California are based upon Delaware state law. The elements of such a claim are as follows:

> To recover on a claim of corporate waste, [defendants] must shoulder the burden of proving that the exchange was so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration. *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (A claim of waste will arise only in the rare, unconscionable case where directors irrationally squander or give away corporate assets. This onerous standard for waste is a corollary of the proposition that where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be attributed to any rational business purpose.).

*In re Asyst Technologies, Inc. Derivative Litigation*, No. C-06-04669 EDL, 2008 U.S. Dist. LEXIS 41173, *30 (N.D. Cal. May 23, 2008) (quotation marks omitted). *See also Navellier v. Sletten*, 262 F.3d 923, 937 (9th Cir. 2001) (same). To meet this burden, counterclaimants must allege "particularized facts," or, "[p]ut another way, [counterclaimants] must show that the [act] in question either served no corporate purpose or was . . . completely bereft of consideration." *Ash v. McCall*, No. 17132, 2000 Del. Ch. LEXIS 144, 23 (Sept. 15, 2000).

Two corporate waste theories are presented by counterclaimants. Each is now addressed in turn.

#### A. Counterclaim Five: Corporate Waste (Misuse of Investor Funds) Against Counterdefendants DePorche and Taylor.

Counterclaimants first allege that counterdefendants DePorche and Taylor engaged in corporate waste by misusing investor funds. To support this theory, counterclaimants allege that they invested approximately $315,000 in Swingless Golf, but that "[Swingless Golf] and its successor SGCC have misused these funds, in that the corporations have not developed the product for many years, and has [*sic*] not made any actual attempts to sell the product, thereby guaranteeing that the investors would not be repaid" (ACC ¶¶ 99, 100). In their motion to dismiss, counterdefendants argue that particularized facts have not been sufficiently alleged to show that these acts served no legitimate corporate purpose.

Although there is a stringent standard to *prove* a claim of corporate waste at trial, counterclaimants need only state a *plausible* claim of corporate waste to survive a motion to

13

dismiss under *Iqbal*. The less stringent standard is satisfied here. Indeed, counterclaimants state that, although hundreds of thousands of dollars were invested in the company, for "many years" the company neither developed nor attempted to sell its namesake product (*Id.* ¶ 100). These facts alone render it *plausible* that the alleged inaction served no legitimate corporate purpose, even if they might be insufficient to meet a more stringent burden of proof at later stages in the proceedings. But, at least at present, counterclaimants' allegations state a claim for conversion that is plausible on its face, and the motion to dismiss counterclaim five is **DENIED**.

### B. Counterclaim Six: Corporate Waste (Abandonment of Patents) Against Counterdefendants SGCC, DePorche, and Taylor.

Counterclaimants separately allege that all counterdefendants engaged in corporate waste through patent abandonment. To support this theory, counterclaimants allege the following facts (*Id.* ¶¶ 103–105):

> In 2007, [counterclaimant] Roy Taylor reclaimed the patents and paid $2,020.00 in Patent Maintenance Fees on Patent 5,522,594. Had he not done so, the patents stood to become abandoned. . . . SGCC had made no move to maintain the patents. . . . As the patents are the one valued assets [*sic*] of SGCC, this amounts to corporate waste due to the decision of the Board of Directors including [DePorche] and [Joyce Taylor]. This decision was made without regard that abandonment of the patents would allow them to come to the market to be taken by competitors. Without the actions of [counterclaimant Roy] Taylor to save the patents their would be no qualified assets of Swingless thus depriving all [counterclaimants] their right to recover investments in time and monies.

Unlike the previous theory, this claim does *not* allege sufficient factual allegations to meet the plausibility standard under *Iqbal*. As stated earlier, the burden in this case is on counterclaimants to allege particularized facts that make it *plausible* that the act in question "either served no corporate purpose or was . . . completely bereft of consideration." Here, counterclaimants clearly state that counterdefendants did nothing up until the point that counterclaimant Roy Taylor paid the one patent maintenance fee in 2007. These facts alone are insufficient to demonstrate abandonment, since there is no allegation that counterdefendants would have actually allowed abandonment to occur.

Indeed, had counterclaimant Roy Taylor *not* acted to save the patent in question, it is unclear whether counterdefendants would have continued to do nothing or whether

14

counterdefendants would have paid the fee.  Counterclaimants neither state when the maintenance fee in question was due, nor is it clearly alleged that failure to timely pay the maintenance fee as to *one* patent would cause all of SGCC's patents to be abandoned and unsalvageable.  Roy Taylor's apparent *preemptive* payment of a maintenance fee to prevent a *possible* abandonment of the patent at some future time is *not* sufficient to show actionable wrongdoing by counterdefendants.

In sum, counterclaimants have not alleged sufficient facts to state a plausible claim for corporate waste due to abandonment of patents, and therefore the motion to dismiss counterclaim six is **GRANTED**.

### 6. COUNTERCLAIM SEVEN: BREACH OF FIDUCIARY DUTIES AGAINST COUNTERDEFENDANT DEPORCHE.

Counterclaim seven alleges that counterdefendant DePorche breached various fiduciary duties owed to counterclaimants.  A claim for breach of fiduciary duties in California requires a finding that:  (1) counterdefendant DePorche owed a fiduciary duty to the party in question; (2) the duty was breached; and (3) the breach caused the harm suffered.  *First Interstate Bank of Arizona, N.A., v. Murphy, Weird and Butler*, 210 F.3d 983, 986 (9th Cir. 2000).

Counterclaimants allege the following facts in support of this counterclaim.  First, as part of their general allegations, counterclaimants suggest DePorche breached a fiduciary duty owed to Swingless Golf *shareholders* (including counterclaimants) by failing to (ACC ¶ 60):

> [E]nsure that the corporation is operated in a legal manner to ensure a continual business and decisions that are appropriate. [DePorche] and [Joyce Taylor] have failed to act in such a manner by refusing to provide any material data as to the operation of Swingless Golf to [counterclaimant Roy] Taylor a 30% shareholder.  Further [DePorche] and [Joyce Taylor] have failed to provide any accounting or assessment as to the operational condition related to the product line, marketing maintenance of the patents, potential sales, and on going operation of the corporation.  Additionally, [counterdefendants DePorche] and [Joyce Taylor] have failed to hold noticed share holder meetings, issue shares as required, produce any accounting of the business operation, or produce quarterly, or annual reports of the business operations.

However, when setting forth the counterclaim itself, counterclaimants suggest that DePorche breached a fiduciary duty owed to Swingless Golf *the corporation* (*id.* ¶¶ 107–109):

15

|   |   |
|---|---|
| 107. | [Counterclaimants] re-allege and incorporate Paragraphs 1-106, inclusive. |
| 108. | [Swingless Golf]'s Board of Directors owed fiduciary duties of loyalty and care to [Swingless Golf]. |
| 109. | [Swingless Golf]'s Board of Directors are liable for all reasonable damages that flow from the intentional breach of [counterclaimants] as decided by this Court. |

In their motion to dismiss, counterdefendants appear confused as to whether this counterclaim is directed at a breach of fiduciary duties owed to the corporation itself, to the shareholders, or to both. As a result, counterdefendants move to dismiss solely on the ground that counterclaimants have not sufficiently alleged that Swingless Golf *the corporation* was damaged by such a breach.

This is insufficient to warrant dismissal. While the three paragraphs setting forth the counterclaim itself make no specific reference to fiduciary duties owed to Swingless Golf shareholders, paragraph 107 specifically re-alleges and incorporates the prior paragraphs that do (*See id.* ¶¶ 60, 107). Indeed, counterdefendants acknowledge the same in their motion (Br. 12–13). Moreover, counterdefendants expressly acknowledge that directors of a corporation owe fiduciary duties to *both* the corporation itself *and* the corporation's shareholders (Br. 18). *See also United States v. O'Hagen*, 521 U.S. 642, 652 (1997).

Despite these concessions, counterdefendants never address the sufficiency of defendants' claim that DePorche breached duties owed to Swingless Golf *shareholders* (*i.e.*, to counterclaimants themselves). By contrast, they concede that counterclaimants have sufficiently alleged that fiduciary duties as to shareholders were breached. Indeed, counterclaimants emphasize throughout their amended counterclaims the extent of the financial losses that they allege were proximately caused by DePorche's breach of this duty.

In sum, counterclaimants have alleged sufficient facts to state a plausible claim for breach of fiduciary duty owed to Swingless Golf shareholders. As such, the motion to dismiss counterclaim seven must be **DENIED**.

16

### 8. COUNTERCLAIM EIGHT: CORPORATE ABUSE AGAINST COUNTERDEFENDANTS DEPORCHE AND TAYLOR.

Counterclaim eight alleges "corporate abuse" by counterdefendants DePorche and Taylor in the following manner (ACC ¶ 111):

> 110. Defendants re-allege and incorporate paragraphs 1–109, inclusive.
>
> 111. Failure to hold shareholders' meetings and keeping shareholders uninformed of the intentional acts of failure to develop the patents or divulge the failure to maintain the patents properly under the United States Patent Office, failure to maintain marketing and managing the patent asset, and failure to allow moving parties the right to utilize the patents as they were designed. As such the Board of Directors are liable for all reasonable damages that flow from the intentional breach of Defendants as decided by this Court.

There are numerous deficiencies with this counterclaim. *First*, it is unclear exactly to what corporate duty or duties the "breach" in paragraph 111 refers. While paragraph 110 incorporates all prior allegations made by counterclaimants into this counterclaim, this does not remedy this facial ambiguity. *Second*, neither the undersigned nor counterdefendants could not find any recognized cause of action for "corporate abuse" under California law.

In their opposition, counterclaimants' sole argument is that the exact same facts as those that form the basis for their breach of fiduciary duty counterclaim apply here, and this should be sufficient to survive a motion to dismiss (Opp. 9). Assuming, therefore, that the "breach" mentioned in paragraph 111 is a breach of fiduciary duty, this would transform the "corporate abuse" counterclaim into a restatement of counterclaim seven, but under a different name and addressed to an additional party.

Regardless, such guessing games would be unnecessary if this counterclaim were sufficiently pled under FRCP 8. Because of the factual and legal deficiencies noted above, plaintiff's counterclaim of "corporate abuse" fails to state a plausible claim, and therefore the motion to dismiss counterclaim eight must be **GRANTED**.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss the amended counterclaims is hereby **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is **GRANTED** as to the following:

1. Counterclaim 3: Unjust enrichment against counterdefendants James DePorche and Joyce Taylor;

2. Counterclaim 4: Breach of implied contract against counterdefendants James DePorche and Joyce Taylor;

3. Counterclaim 6: Corporate waste (abandonment of patents) against counterdefendants SGCC, James DePorche, and Joyce Taylor; and

4. Counterclaim 8: Corporate abuse against counterdefendants James DePorche and Joyce Taylor.

And **DENIED** as to the following:

1. Counterclaim 1: Fraud against counterdefendants James DePorche and Joyce Taylor;

2. Counterclaim 2: Conversion against counterdefendants James DePorche and Joyce Taylor;

3. Counterclaim 5: Corporate waste (misuse of investor funds) against counterdefendants James DePorche and Joyce Taylor; and

4. Counterclaim 7: Breach of fiduciary duties against counterdefendant James DePorche.

If counterclaimants wish to amend their counterclaims in light of the above dismissals, an administrative motion requesting leave to do so must be filed with the Court no later than **NOON ON WEDNESDAY, DECEMBER 30, 2009**. The motion must describe the proposed amendments and how they rectify the defects identified in this order.

Additionally, counsel are reminded that the trial will occur on September 20, 2010, and they are encouraged to suspend their motion practice in favor of preparing their cases for trial.

**IT IS SO ORDERED.**

Dated: December 24, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE